**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

Laura M Casares

Plaintiff,

v.

South Carolina Department of Corrections

Defendants,

Case No.: 3:26-cv-3810-SAC-MHC

**COMPLAINT**

Plaintiff, Laura M. Casares ("Plaintiff"), by and through her undersigned counsel, brings this action against Defendant, South Carolina Department of Corrections ("SCDC"), and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Laura Casares is an adult, female resident of Kershaw County, South Carolina.

2. South Carolina Department of Corrections (“SCDC”) is a state agency with its principle office located in Richland County, South Carolina.

3. This action arises under 29 U.S.C. §206(d), prohibiting discrimination between employees “on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.” 29 U.S.C. §206(d). This action is permitted under 29 U.S.C. Section 216(b) allowing for a private right of action for violations of the Equal Pay Act.

4. This action also arises out of a violation of the South Carolina Whistleblower Protection Act, codified at S.C. Code Ann. §8-27-10 *et seq* ("WPA").

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and supplemental jurisdiction over the state level claims in accordance with 28 U.S.C. §1367.

6. In accordance with 28 U.S.C. §1391, venue is proper in the District Court of South Carolina, Columbia Division as that is where Defendant is located, and where the most substantial part of the alleged harm occurred.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment with SCDC

7. Plaintiff repeats and realleges each and every preceding paragraph as though fully set forth herein.

8. Plaintiff commenced employment with Defendant South Carolina Department of Corrections ("SCDC") in or around 2019.

9. Plaintiff possesses approximately twenty-six (26) years of law enforcement experience obtained through service in the States of Florida, Colorado, and South Carolina. Throughout her career, Plaintiff maintained an exemplary professional record, receiving no disciplinary actions and no negative performance evaluations.

10. While employed by Defendant, Plaintiff successfully completed numerous advanced law enforcement and leadership programs, including the Excellence in Policing and Public Service Program through the University of South Carolina School of Law, and earned a Doctor of Philosophy (Ph.D.) degree from Liberty University in or about March 2025.

11. On or about May 2025, Plaintiff was promoted to the position of Deputy Inspector General under Inspector General Frank Kelley. As Deputy Inspector General, Plaintiff occupied one of the highest-ranking leadership positions within the OIG and was entrusted with substantial supervisory, investigative, administrative, and executive responsibilities.

12. Plaintiff's responsibilities included, among other things:

    a. supervising criminal and administrative investigations;
    b. overseeing subordinate investigators and command staff;
    c. ensuring compliance with applicable laws, agency policies, and investigative standards;
    d. reviewing investigative files and reports;
    e. assisting in the development and implementation of departmental policies;
    f. providing executive leadership within the Office of Inspector General; and
    g. performing such other duties as assigned.

13. At all relevant times, Plaintiff satisfactorily performed the essential functions of her position.

14. Plaintiff's performance consistently met or exceeded Defendant's legitimate expectations.

15. At no time prior to the retaliatory conduct described herein was Plaintiff placed on corrective action, disciplinary probation, or otherwise notified that her work performance was deficient.

**B. Pay Discrimination**

16. Upon information and belief, Defendant compensated Plaintiff at a rate of pay lower than one or more similarly situated male employees performing substantially equal work.

17. The male comparator(s) include, but are not limited to Thomas Wade Fleming, Bryan Antonelli, and Joseph Tony Stines.

whose positions, duties, responsibilities, qualifications, supervisory authority, and working conditions were substantially equal to those performed by Plaintiff.

18. Plaintiff and the male comparator(s) performed work requiring substantially equal:

    a. skill;
    b. effort;
    c. responsibility; and
    d. performance under similar working conditions.

19. Any differences between Plaintiff's duties and those of her male comparator(s) were insignificant and did not justify the disparity in compensation.

20. Defendant paid Plaintiff less because of her sex.

21. The wage disparity was not based upon:

    a. a seniority system;
    b. a merit system;
    c. a system measuring earnings by quantity or quality of production; or
    d. any factor other than sex.

22. Plaintiff repeatedly performed executive-level duties equivalent to or exceeding those performed by similarly situated male employees while receiving lower compensation.

23. Defendant knowingly continued paying Plaintiff at a lower rate despite her qualifications, experience, education, and responsibilities.

**C. Plaintiff's Protected Conduct**

24. Throughout her employment, Plaintiff consistently acted in accordance with her legal and ethical obligations as a law enforcement executive.

25. Plaintiff repeatedly raised concerns regarding Defendant's compliance with applicable laws, investigative procedures, agency policies, and ethical standards.

26. Plaintiff also reported conduct that she reasonably believed constituted violations of law, abuse of authority, improper governmental action, and conduct contrary to public policy.

27. Plaintiff's reports included concerns regarding, among other things:

   a. investigative integrity;
   b. improper interference with criminal investigations;
   c. investigative procedures involving the Office of General Counsel;
   d. improper handling of employee investigations;
   e. violations of agency policies;
   f. improper dissemination of investigative information;
   g. retaliation against employees who questioned agency practices; and
   h. other matters to be identified through discovery.

28. Plaintiff made these disclosures to supervisors, command staff, Human Resources personnel, legal counsel, and/or other appropriate governmental officials, including but not limited to Inspector General Frank Kelley, Chief Cody Wilson, and Deputy Inspector General Salley Elliot that potential criminal, or at a minimum ethical violations had occurred. This occurred in April of 2026.

29. More specifically, Plaintiff presented evidence to some or all of the above named individuals within the agency that a member of the Office of General Counsel had sent an alarming internal email which tended to suggest that future convictions of inmates within SCDC were more important than disclosing (1) the likely involuntary nature of their confessions and (2) information which would likely prove to be exculpatory in nature.

30. Plaintiff also participated in protected activity by submitting internal complaints regarding the hostile work environment and inappropriate treatment occurring within Defendant's organization. Plaintiff's timeline reflects that she filed a formal hostile work environment complaint in October 2025 after repeated incidents that she believed created an unprofessional and hostile environment.

31. Plaintiff reasonably believed that the conduct she reported violated agency policy, state law, and public policy.

32. Plaintiff made each of these reports in good faith.

**D. Escalating Retaliation**

33. Following Plaintiff's protected activity, Defendant's treatment of Plaintiff materially changed.

34. Plaintiff was increasingly excluded from decision-making processes, subjected to heightened scrutiny, undermined in the performance of her duties, and deprived of the professional support routinely afforded to similarly situated employees.

35. Plaintiff observed what she reasonably believed to be retaliatory conduct directed not only toward herself but also toward Inspector General Frank Kelley after concerns were raised regarding investigative practices and the actions of members of Defendant's Office of General Counsel.

36. Plaintiff continued performing her duties professionally while seeking clarification and attempting to address these concerns through appropriate internal channels.

37. Rather than investigating Plaintiff's concerns, Defendant increasingly targeted Plaintiff for adverse treatment.

**E. Suspension, Reinstatement, and Termination**

38. On or about April 22, 2026, Defendant suspended Plaintiff without pay.

39. Plaintiff was advised that the suspension allegedly related to her accessing the Email Archiver system, despite Plaintiff possessing written authorization signed by Defendant's Director authorizing the Inspector General, Deputy Inspector General, or their designees to access that system in connection with investigations. Plaintiff's grievance specifically references the signed authorization memorandum and challenges the asserted basis for her suspension.

40. Plaintiff was never provided with meaningful notice of the alleged misconduct, an adequate explanation of the accusations, or the procedural protections ordinarily afforded under Defendant's disciplinary policies.

41. Plaintiff was denied the opportunity to utilize accrued leave and was immediately placed in an unpaid status.

42. Shortly after the suspension, Plaintiff was contacted by representatives of Defendant's Office of General Counsel – the very department on the receiving end of Plaintiff's report of criminal or unethical activity - and advised that she could resign if she agreed to execute a release of claims against Defendant. Plaintiff's grievance alleges that this offer was made even though she had not been informed that she was under investigation.

43. Plaintiff refused to relinquish her legal rights.

44. On or about May 8, 2026, Plaintiff and her legal counsel met with members of SCDC human resources and its outside legal department.

45. Plaintiff answered those questions she felt were appropriate, and elected to not respond to questions she believed impacted her legal rights.

46. Thereafter, Plaintiff received notice from SCDC human resources that the investigation had concluded and that her administrative leave would be lifted.

47. Plaintiff was instructed to return to work, a clear indication that the reported conduct was not an actionable offense.

48. However, on June 15, two (2) days before Plaintiff was instructed to return to work, she was informed by Derrick Horton that another administrative investigation was pending.

49. Despite evidence that directly contradicted the basis of Plaintiff's new suspension without pay, Plaintiff was formally terminated.

50. Defendant's stated reasons for Plaintiff's suspension and termination were false, pretextual, inconsistent, and intended to conceal unlawful retaliation and discrimination.

51. As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages, lost employment benefits, damage to her professional reputation, emotional distress, humiliation, inconvenience, loss of future earning capacity, and other damages in amounts to be determined by the evidence presented at trial.

## FIRST CAUSE OF ACTION
**Violation of the Equal Pay Act 29 U.S.C. § 206(d)**

52. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 52 as though fully set forth herein.

53. At all relevant times, Defendant was an employer within the meaning of the Fair Labor Standards Act and the Equal Pay Act.

54. At all relevant times, Plaintiff was an employee within the meaning of the Equal Pay Act.

55. Defendant employed Plaintiff as Deputy Inspector General.

56. Plaintiff performed work requiring substantially equal skill, effort, and responsibility when compared with one or more male employees employed by Defendant.

57. Plaintiff and the male comparator(s) performed their duties under substantially similar working conditions.

58. Plaintiff's duties included, but were not limited to:
    a. supervising criminal and administrative investigations;
    b. directing subordinate investigators and command staff;
    c. reviewing investigative files and reports;
    d. ensuring compliance with applicable federal, state, and agency requirements;
    e. developing investigative policies and procedures;
    f. providing executive leadership within the Office of Inspector General; and
    g. performing additional executive-level responsibilities assigned by Defendant.

59. Plaintiff possessed qualifications, education, certifications, law enforcement experience, and leadership responsibilities equal to or exceeding those of the male comparator(s).

60. The work performed by Plaintiff required substantially equal skill, effort, responsibility, judgment, discretion, and supervisory authority.

61. Defendant paid Plaintiff less than similarly situated male employees performing substantially equal work.

62. The disparity in compensation was not based upon:
    a. a bona fide seniority system;
    b. a bona fide merit system;
    c. a system measuring earnings by quantity or quality of production; or
    d. any factor other than sex.

63. Defendant knew, or reasonably should have known, that Plaintiff was being compensated less than similarly situated male employees performing substantially equal work.

64. Despite possessing this knowledge, Defendant knowingly continued the discriminatory compensation practices.

65. Defendant's violations of the Equal Pay Act were wilful.

66. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages including, but not limited to:

    a. lost wages;
    b. lost salary increases;
    c. lost retirement contributions;
    d. lost employment benefits;
    e. loss of future earnings;
    f. liquidated damages as authorized by 29 U.S.C. § 216(b);
    g. attorneys' fees and litigation expenses; and
    h. all additional damages recoverable under federal law.

**<u>FOR A SECOND CAUSE OF ACTION</u>**
**(Violation of South Carolina Whistleblower Protection Act)**

67. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 52 as though fully set forth herein.

68. The conduct reported by Plaintiff falls squarely within the definition of “wrongdoing” of the Whistleblower Protection Act (“WPA”) as the report makes note, in good faith, Plaintiff’s belief that violations of state and/or federal laws, and codes of ethics.

69. Plaintiff reported the conduct to the “appropriate authority” under the WPA as it was reported directly to the public body employing her and subsequently to an agency

having jurisdiction over criminal law enforcement i.e. the Office of the Attorney General.

70. The conduct was reported within one hundred and eighty (180) days of Plaintiff becoming aware of the conduct and as a direct and proximate result of the same, Plaintiff was subjected to adverse employment actions including unpaid suspension and ultimately termination.

71. Plaintiff is therefore entitled to an award of all forms of damages allowed under the WPA against Defendants.

**WHEREFORE**, Plaintiff Laura M. Casares respectfully requests that this Court enter judgment in her favor and against Defendant South Carolina Department of Corrections and award the following relief:

a. Declare that Defendant's acts, policies, practices, and conduct complained of herein violated the Equal Pay Act, 29 U.S.C. § 206(d), and the South Carolina Whistleblower Act, S.C. Code Ann. § 8-27-10, et seq.;
b. Award Plaintiff all unpaid wages and compensation unlawfully withheld, together with prejudgment interest;
c. Award Plaintiff back pay, lost employment benefits, retirement benefits, pension contributions, bonuses, and all other compensation lost as a result of Defendant's unlawful conduct;
d. Award Plaintiff front pay in lieu of reinstatement, or alternatively order reinstatement to her former position or to a substantially equivalent position with all seniority, benefits, and privileges restored;
e. Award Plaintiff liquidated damages as provided by the Equal Pay Act;
f. Award Plaintiff compensatory damages in an amount to be determined by the evidence presented at trial, including damages for emotional distress, humiliation, embarrassment, damage to reputation, inconvenience, and loss of enjoyment of life, to the extent permitted by applicable law;
g. Award Plaintiff all damages available under the South Carolina Whistleblower Act;

h. Award Plaintiff reasonable attorneys' fees, expert witness fees where recoverable, litigation expenses, and taxable costs pursuant to applicable federal and state law;

i. Award pre-judgment and post-judgment interest as allowed by law;

j. Award such other and further legal or equitable relief as this Court deems fair, just, and appropriate.

Respectfully Submitted this 2nd
day of September 2026

**TRULUCK THOMASON, LLC**

s/ Devon M. Puriefoy
Devon M. Puriefoy
Federal ID No.: 12461
3 Boyce Ave
Greenville, South Carolina 29601
Phone: (864) 331-1751
devon@truluckthomason.com

*Attorney for Plaintiff*